# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD WEAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-3499-MAB |
| | ) |
| THOMAS KUPFERER and CONNIE FAULKENBERRY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Edward Weaver is proceeding on a Fourteenth Amendment claim for inadequate medical treatment and a state law claim for medical negligence against Defendants Dr. Thomas Kupferer and Nurse Connie Faulkenberry for denying him adequate medical care for his fractured leg and cellulitis between September 22, 2022 and November 18, 2022, during his detention at the Jackson County Jail (Doc. 7).

This matter is currently before the Court on various motions filed by Plaintiff, each of which is addressed in turn below. The Court notes that these motions were filed between two and six months ago, and the delay in addressing them is regrettable but was due to the press of other matters.

**A. MOTION FOR SUBPOENA DUCES TECUM (Doc. 32)**

Plaintiff wants to subpoena records from Menard Correctional Center and from St. Joseph Hospital. Defendants may have already obtained those records and produced

them to Plaintiff,[1] but in the event that is not true, Plaintiff's motion is granted. Per Local Rule 45.1, the Clerk of Court will mail Plaintiff blank subpoena duces tecum forms (AO Form 088B).[2] Plaintiff must complete the forms and submit them to the Court for review and approval. When filling out the subpoena, Plaintiff shall give a reasonable time for response by marking the "Date and Time:" field as follows: "14 days after receipt." Plaintiff shall take appropriate steps to avoid imposing undue burden or expense on a person subject to subpoena and shall restrict his requests to information that is relevant to the claims or defenses in this action.

If the subpoenas are approved by the Court, Plaintiff is advised that he will be responsible for serving the subpoenas in accordance with Federal Rule of Civil Procedure 45, and he is also responsible for paying the associated costs for service and the records requested. Certified mail through the United States Postal Service is sufficient to meet the service requirements. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012).

---

[1] The Court notes that Plaintiff noted elsewhere that he signed a release for medical records from St. Joseph Hospital and Jackson County (Doc. 28, pp. 3–4, 8–9).

[2] Local Rule 45.1, "Issuance of Subpoenas to a Pro Se Party in Civil Cases," provides:
   (a) The Clerk of Court shall issue subpoenas to a *pro se* party only upon Order of the Court. Thus, in a civil case, if a pro se party requests the issuance of subpoenas, the Clerk's Office will provide the pro se party blank, unsigned subpoena forms.
   (b) The *pro se* party must then complete the forms and file a motion with the presiding judge for an Order authorizing the issuance of the requested subpoenas for specific witnesses or documents. The completed forms shall be attached to the motion for the Court's review and approval. The motion must address the relevancy of the subject persons or documents of the requested subpoena to the claims or defenses at issue. A pro se party must pay all applicable fees associated with the subpoena, even if the pro se party has been granted leave to proceed in forma pauperis. See 28 U.S.C. § 1915(d). Pro se parties should review Fed. R. Civ. P. 45 in its entirety.

B. **MOTION TO AMEND/SUPPLEMENT COMPLAINT** (Doc. 33)

After Plaintiff was convicted, he was transferred from the custody of Jackson County to the custody of the Illinois Department of Corrections (IDOC), where he has been housed at Menard Correctional Center since June 2024 (*see* Doc. 10). In his motion, Plaintiff alleges that he has continued to receive deficient medical care for his leg since his arrival at Menard and he seeks to amend his complaint to add Eighth Amendment deliberate indifference claims against Wexford Health Sources, the Health Care Unit Administrator (whose name Plaintiff does not know), and Menard Correctional Center (Doc. 33).

Rule 15(a)(2) provides that courts should "freely give leave" to parties to amend their pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2). This is a liberal standard, which the Supreme Court has interpreted "to require a district court to allow amendment unless there is a good reason," such as futility, "for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962)). *See also* 28 U.S.C. § 1915A (claims in a civil action brought by prisoner can be dismissed if they are "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "see[k] monetary relief from a defendant who is immune from such relief.") "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (citation omitted).

Plaintiff's motion is denied for two primary reasons. First, Plaintiff's proposed amended complaint only contains allegations related to his medical care at Menard, and

he did not replead the allegations against Defendants Kupferer and Faulkenberry regarding the care he received at the Jackson County Jail (*see* Doc. 33). The Court previously instructed that an "amended complaint . . . will replace the prior complaint in its entirety so any claims or parties that are not included in the proposed amended complaint will be automatically dismissed." (Doc. 21, p. 4, section III(B)). *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. . . . [A] plaintiff's new complaint wipes away prior pleadings . . . .") (citation omitted). Thus, if the Court were to accept Plaintiff's amended complaint, his pending claims against Defendants Kupferer and Faulkenberry would be dismissed. The Court is skeptical that Plaintiff intended for that result.

Second, the new parties and new claims that Plaintiff seeks to add cannot be properly joined in this lawsuit. Multiple defendants can only be joined in one action if the plaintiff's right to relief against each defendant "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences" and that some "question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). While the pending claims and the proposed additional claims are of the same general character in that they both challenge Plaintiff's medical care for his leg injury, the two sets of claims do not arise from the same series of transactions or occurrences; they involve medical care provided by entirely different groups of people at entirely different facilities.

*See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007) ("Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ."). Plaintiff's claims arising out of his medical care at Menard should be raised, if at all, in a separate case after he exhausts his administrative remedies.

    **C. MOTION FOR COUNSEL** (Doc. 28) **AND SUBSEQUENT MOTION FOR STATUS** (Doc. 36)

This is Plaintiff's second motion for counsel. His first motion was denied because, although Plaintiff had made a reasonable attempt to recruit an attorney on his own, he did not provide enough information for the Court to determine that the demands of the litigation exceeded his capabilities (Doc. 27). Thirteen days after his first motion for counsel was denied, (Doc. 27), Plaintiff filed his second motion (Doc. 28).

There is no right to recruitment of counsel in federal civil litigation, but a district court has discretion to recruit counsel to represent an indigent litigant under 28 U.S.C. § 1915(e)(1). *McCaa v. Hamilton*, 959 F.3d 842, 844 (7th Cir. 2020) ("*McCaa II*").[3] In deciding whether to recruit counsel, the Court must consider the practical realities of doing so in this District. *Id.* The Southern District of Illinois has a high volume of cases filed by indigent prisoners, almost all of whom ask for an attorney to represent them, but the District has a relatively limited pool of attorneys available to take cases on a pro bono basis. In other words, there are not enough attorneys to give one to every prisoner who asks. The Court is thus forced to "ratio[n] [its] limited supply of free lawyer time," *Id.*,

---

[3] The Court will refer to this opinion by the Seventh Circuit as "*McCaa II*" and a prior opinion in the same case, *McCaa v. Hamilton*, 893 F.3d 1027, 1033 (7th Cir. 2018), as "*McCaa I*."

and to try to "identif[y], among a sea of people lacking counsel, those who need counsel the most." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

In deciding whether to recruit an attorney for Plaintiff, the question for the Court is once again "whether the difficulty of the case, factually, legally, and practically, exceeds [Plaintiff's] capacity as a layperson to coherently litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at the type of claims being advanced, the stage of litigation, and all the tasks that normally attend litigation, including "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 491. The Court also looks at "the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations, and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases of the case. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013).

In this motion, Plaintiff generally asserts the same reasons for needing an attorney but provides a bit more information. He once again states that he has only a grade school education (Doc. 28; *see also* Doc. 23). He attached his results from the TABE test, which show a reading score of eight and a math score of six (Doc. 28, p. 6). According to Plaintiff, that means he reads at an eighth-grade level and does math at a sixth-grade level (*see id.* at p. 3). Plaintiff also states that he has no litigation experience and has made mistakes in completing simple litigation-related tasks, like executing a release for medical records

(Doc. 28, p. 3). He says he mistakenly sent the signed release to the facilities from which Defendants wanted to obtain records, rather than to defense counsel (*Id.* at pp. 3-4).

These issues alone are not enough to convince the Court that recruitment of counsel is warranted. A substantial majority of prisoners who are representing themselves in this District have limited education and know little about the law. They would all benefit from having a lawyer, "but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson,* 750 F.3d at 711. Therefore, the Court must consider the other points made by Plaintiff in order to determine whether to recruit an attorney for him.

Plaintiff indicates that he has very limited access to the law library at Menard (Doc. 28, p. 2; Doc. 36, p. 1), and "is relying on jailhouse lawyer help which is unreliable" (Doc. 28, p. 4). Plaintiff did not explain why he needs more access to the law library or what he is trying to research (*see* Doc. 28). Nor did he explain why he considers the help he has been receiving from other inmates to be "unreliable," (*see* Doc. 28), and the Court will not make any assumptions on this point. It is also not apparent, and Plaintiff did not explain, what and how much the other inmates have contributed to his filings (*see* Doc. 28). The Court is unsure if Plaintiff has filed anything on his own. Thus, it is all but impossible for the Court to meaningfully assess if Plaintiff himself is incapable of adequately communicating his position and making coherent, relevant arguments. *See McCaa I*, 893 F.3d at 1033 ("courts must specifically examine a plaintiff's personal ability to litigate the case, versus the ability of the 'jailhouse lawyer' who assisted the plaintiff.") (citation and internal quotation marks omitted).

With respect to the claims Plaintiff is advancing, the Seventh Circuit has recognized that deliberate indifference claims can be too difficult and complex for *pro se* plaintiffs to handle on their own, *McCaa II*, 959 F.3d at 846, but that is not categorically true for all deliberate indifference claims. *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) ("[N]ot every deliberate indifference case is so complex and beyond the individual plaintiff's capacity as to warrant the recruitment of counsel . . . ."). As the Court previously stated, Plaintiff's claims appear to be relatively straightforward as far as deliberate indifference claims go (Doc. 27). He alleges that he was taken to the emergency room and diagnosed with a fracture in his left tibial plateau and cellulitis, but once back at the jail, was not given any assistive devices to help him walk or a wheelchair (*see* Doc. 7). He claims that being forced to walk on his leg worsened his existing injuries and caused him to suffer an additional injury to his foot (*Id.*). The Court does not think that a broken leg and cellulitis are complex medical issues. *But see James v. Eli*, 889 F.3d 320, 330 (7th Cir. 2018) (case involved complex medical evidence where plaintiff's diagnosis and physician's findings were not "readily decipherable without specialized training"); *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014) ("Henderson's case involves complex medical terms and concepts: kidney disease, end stage renal failure, creatine and blood urea nitrogen levels, 'out of range' lab results, and dialysis, to name a few.").

There is also no indication that the evidence involves competing opinions from different medical professionals or varying recommended courses of treatment. *See Dewitt*, 760 F.3d at 658; *Henderson*, 755 F.3d at 566–67. And given the nature of Plaintiff's allegations, it does not seem that expert testimony will be required to establish whether

Page 8 of 12

Defendants' decision not to provide Plaintiff with an assistive device or wheelchair was "a substantial departure from accepted professional judgment, practice, or standards." *But see James v. Eli*, 889 F.3d 320, 328 (7th Cir. 2018) (recognizing that cases "where a prisoner has received at least *some* medical treatment," are typically more difficult for pro se litigants "because he must show 'a substantial departure from accepted professional judgment, practice, or standards,' and expert medical evidence is often required to prove this aspect of his claim."); *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (noting that the plaintiff's case was "legally more complicated than a typical failure-to-treat claim because it require[d] an assessment of the adequacy of the treatment that [the plaintiff] did receive, a question that [would] likely require expert testimony"). It also does not appear, and the Court has not been given any information that suggests, there are state-of-mind issues that may involve subtle questions too complex for a pro se litigant. *See Olson*, 750 F.3d at 711–12.

As for the phase of litigation, discovery on the merits had commenced when Plaintiff filed his motion for counsel (*see* Doc. 28, Doc. 21), meaning Plaintiff "undoubtedly face[d] 'an increasingly complex set of demands.'" *James*, 889 F.3d at 327. Additionally, as the Court previously noted, Plaintiff was no longer housed at Jackson County Jail, where his claims arose (Doc. 27), which could potentially complicate his ability to conduct discovery. *See James*, 889 F.3d at 327. However, Plaintiff previously "did not point to any specific litigation-related tasks that he has been unable to complete or highlight any particular problems he is having. He also gave no indication that his location affected his ability to effectively participate in the discovery process thus far."

(Doc. 27, pp. 3–4).

This time around, Plaintiff generally claims that he "does not know how to conduct discovery," and an attorney would help him take depositions and obtain his medical records (Doc. 28, p. 5). He also says that he "cannot adequately investigate this case [while] housed at Menard" (*Id.* at p. 4), but he says very little about why that is so. The only specifics he provided are that he thinks he will need to call witnesses who were housed with him at the Jail, and an attorney could help him locate those individuals (*Id.* at pp. 4, 5), and he will "likely need to call other medical providers from Jackson County as well as his treating doctors at St. Joseph Hospital" (*Id.* at p. 4). He then said in a subsequent motion that he was "having trouble getting documents and information about witness[es]" (Doc. 36, p. 1), but did not elaborate any further.

The Court has no doubt that an attorney would be beneficial to Plaintiff and would do a better job with discovery than he could do on his own. But that is not the standard. *See Pennewell,* 923 F.3d at 490 ("The question is not whether the pro se litigant would be as effective as a lawyer . . . ."); *Olson,* 750 F.3d at 712 ("[Plaintiff] didn't have to be as proficient as a seasoned civil-rights attorney . . . ."). Rather the question is whether Plaintiff is capable of identifying the right type of evidence for his deliberate indifference claims and utilizing the discovery process to obtain that evidence from his adversaries (and perhaps some third-parties). *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Plaintiff makes the conclusory assertions that he does not know how to conduct discovery, and he cannot conduct a proper investigation while housed at Menard, but the Court does not know if Plaintiff has even tried because he provides little to nothing in the

way of details. The Court does not know, for example, what, if any, discovery requests Plaintiff has served, what degree of success he has had, whether he has encountered any obstacles in his pursuit of discovery, etc. *See, e.g., Dewitt v. Corizon, Inc.*, 760 F.3d 654, 659 (7th Cir. 2014).

With respect to the potential witnesses from the jail, in the Court's experience, inmate witnesses rarely play a pivotal role in another inmate's lawsuit. And here, Plaintiff did not explain who these individuals were or what he expected them to say, let alone why he thought that testimony would be critical to his case (*see* Doc. 28). He also did not say whether he has made any effort to obtain information from these witnesses himself (*see id.*). Finally, the Court does not know what type of information Plaintiff has about these witnesses (for example, does he know their full names?), and thus cannot say whether an attorney might actually have a reasonable chance of locating them.

As for the "other medical providers from Jackson County" and the "treating doctors at St. Joseph Hospital, Plaintiff once again says very little (*see* Doc. 28). The Court is therefore at a loss as to whom Plaintiff is seeking evidence from, what he expects them to say, or why they might be indispensable to his case. The Court also has no idea whether Plaintiff has made any attempt to obtain information from these individuals on his own.

Evaluating a request for counsel like Plaintiff's is challenging because he does not fall on either end of the spectrum of prisoners asking for an attorney. In other words, it is not readily apparent that he needs an attorney because he is, for example, illiterate, unable to speak English, intellectually disabled, or profoundly mentally ill. But it is also not readily apparent that he does *not* need an attorney because he is highly educated and

demonstrates a high degree of intelligence and skill at writing. He falls somewhere in the middle of the spectrum. His motion speaks mainly in generalities and conclusory statements and provides very few details to the Court. These details are ultimately what matter and how the Court differentiates amongst the multitude of prisoners in the middle of the spectrum as to who warrants the Court's efforts to recruit an attorney. In sum, it is simply not clear from all of the information currently available to the Court that litigating this case is beyond his capabilities.

For these reasons, Plaintiff's motion for counsel is denied. Given the length of time it took the Court to rule on the motion, and the fact that the discovery deadline (June 2, 2025) has now passed (*see* Doc. 21), the Court is willing to entertain a motion to extend discovery if Plaintiff needs additional time, so long as that motion is filed within the next 30 days.

## Conclusion

Plaintiff's Motion for Subpoena Duces Tecum (Doc. 32) is **GRANTED.** The Clerk of Court is **DIRECTED** to mail Plaintiff two copies of a blank subpoena duces tecum (AO Form 088B). Plaintiff's Motion to Amend/Supplement Complaint (Doc. 33) is **DENIED.** Plaintiff's Motion for Counsel (Doc. 28) is **DENIED,** which renders his Motion for Status (Doc. 36) **MOOT**.

    **IT IS SO ORDERED.**

    **DATED: June 11, 2025**

    s/ Mark A. Beatty
    **MARK A. BEATTY**
    **United States Magistrate Judge**