IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD T. WEAVER,                          )
                                           )
              Plaintiff,                    )
                                           )
vs.                                        )    Case No. 3:23-CV-3499-MAB[1]
                                           )
THOMAS KUPFERER                            )
and CONNIE FALKENBURRY,                    )
                                           )
              Defendants.                   )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment

filed by Defendants Dr. Thomas Kupferer and Nurse Connie Falkenburry (Docs. 42, 44),

which are unopposed due to Plaintiff's failure to file responses in opposition. For the

reasons stated below, the motions are granted.

### BACKGROUND

Plaintiff Edward Weaver filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged

deprivations of his constitutional rights while he was detained at the Jackson County Jail

(Doc. 1; *see also* Doc. 7). Following a threshold review of the complaint pursuant to 28

U.S.C. § 1915A, Plaintiff was permitted to proceed on a Fourteenth Amendment claim

against Dr. Thomas Kupferer and Nurse Connie Falkenburry for denying him adequate

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to
28 U.S.C. §636(c) (*see* Doc. 20; *see also* Docs. 6, 17).

medical care for his fractured leg and cellulitis between September 22, 2022 and November 18, 2022 (Count 2), as well as a related state law medical negligence claim (Count 3) (Doc. 7).

Defendants filed their motions for summary judgment on September 2, 2025 (Docs 42, 44). As required, they provided notice to Plaintiff advising him of the consequences of failing to respond to the motions for summary judgment (Docs. 43, 45). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); SDIL-LR 56.1(j). However, after reviewing the Notices, the Court found them inadequate and provided a more comprehensive notice to Plaintiff regarding the manner in which he needed to respond to the motions for summary judgment and the consequences of failing to do so (Doc. 46). Plaintiff sought and was granted two extensions of time to file his response(s) to the motions for summary judgment, and his deadline was ultimately December 12, 2025 (*see* Docs. 50, 52). That deadline came and went, and Plaintiff has yet to file anything.

## FACTS

Plaintiff's failure to respond to Defendants' motions for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). Therefore, the facts asserted by Defendants are deemed admitted to the extent that they are supported by evidence in the record. *See* FED. R. CIV. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted).

Plaintiff Edward Weaver was a detainee at Jackson County Jail (the "Jail") from 2020 until his transfer to Menard Correctional Center on June 21, 2024 (Doc. 42-1, pp. 7–8). Dr. Thomas Kupferer was a physician contracted to provide medical services at Jackson County Jail, and he hired Connie Falkenburry, a registered nurse, to provide some of those services (Doc. 42-3, para. 3, 4; Doc. 42-2, para. 3). Nurse Falkenburry worked at the Jail Monday through Friday from 7:00 a.m. to 3:00 p.m. (Doc. 42-2, para. 4). Dr. Kupferer was present at the Jail at least once per week and was also available by telephone if Nurse Falkenburry had medical questions or if an inmate required prescription medications, imaging, and certain other medical interventions that were outside the scope of her practice (Doc. 42-2, para. 10, 11; Doc. 42-3, para. 4, 8).

In 2022, detainees at the Jackson County Jail were required to follow a formal process to request medical treatment, which entailed submitting a Request for Medical Treatment (Doc. 42-2, para. 5; Doc. 42-3, para. 5; Doc. 42-1, pp. 30–32). It was Nurse Falkenburry's job to respond to the Requests (Doc. 42-2, para. 7; Doc. 42-3, para. 7). She triaged the Requests and scheduled Sick Calls to see and evaluate the detainees, if needed (Doc. 42-2, para. 6, 8, 10; Doc. 42-3, para. 6, 8). Dr. Kupferer, as Nurse Falkenburry's supervisor, would review and sign off on her evaluations to ensure he agreed with her assessment and treatment (Doc. 42-2, para. 9; Doc. 42-3, para. 3, 9). There were also instances where Dr. Kupferer (or someone working on his behalf) would do the Sick Call if it was determined that a detainee needed to be seen by a physician (Doc. 42-2, para. 8).

On September 27, 2022, at 3:03 p.m., Plaintiff submitted a Request for Medical Treatment complaining of chest pain and difficulty breathing after eating tomatoes,

which he said he is allergic to; he did not indicate that he was having any issues with his left leg or foot in that Request or in any prior Requests (Doc. 42-2, para. 12; *see also id.* at p. 9). Nurse Falkenburry responded the following morning at 7:09 a.m., saying that Plaintiff's vitals had been checked and were okay, and she would see him later that day (Doc. 42-2, para. 15; *see also id.* at p. 10). When Nurse Falkenburry saw Plaintiff, she took his vitals, evaluated his lungs, and also examined Plaintiff's left lower calf, which she noted was red, hot to touch, and non-tender (Doc. 42-2, para. 18; *Id.* at p. 10). She documented that Plaintiff had no issues with his gait or ambulation. She diagnosed possible cellulitis, which is a skin infection, of the left lower leg. She recommended that Plaintiff start antibiotics for cellulitis, but he refused, stating that he did not want to pay for medication. Nurse Falkenburry told Plaintiff to request a Sick Call if his condition worsened, and they would have to treat him with medication. He agreed.

Nurse Falkenburry called Dr. Kupferer the following day, on September 29, 2022, about her assessment of Plaintiff's left leg (Doc. 42-2, para. 19; Doc. 42-3, para. 11). This was the first time Dr. Kupferer learned about any issue with Plaintiff's left leg (Doc. 42-3, para. 11). Dr. Kupferer told Nurse Falkenburry to send Plaintiff to the emergency department for a doppler of his leg to check for a blood clot (Doc. 42-2, para. 19; *Id.* at p. 11; Doc. 42-3, para. 11). Plaintiff was taken to SIH St. Joseph Memorial Hospital that same day (Doc. 42-2, para. 20; Doc. 42-3, para. 12; *see also* Doc. 1, pp. 15–19 (hospital records)). The hospital drew blood in order to run labs (Doc. 1, pp. 16–18). An ultrasound was taken of Plaintiff's left leg, which was negative for a blood clot (Doc. 42-2, para. 20; Doc. 42-3, para. 12; *see also* Doc. 1, p. 19). X-rays were also taken of Plaintiff's left lower leg, which

showed no acute fracture or other abnormality (Doc. 42-2, para. 24; Doc. 42-3, para. 13, 15; *see also* Doc. 1, pp. 18–19). The x-rays did, however, show an old, healed fracture for which the hospital did not recommend any treatment (Doc. 42-2, para. 24; Doc. 42-3, para. 13, 15; *see also* Doc. 1, pp. 18–19). Plaintiff was diagnosed at the hospital with cellulitis of his left leg and was discharged with orders for two antibiotics: Amoxicillin and Doxycycline (Doc. 42-2, para 21; Doc. 42-3, para. 12; *see also* Doc. 1, p. 15). There were no orders for crutches, a wheelchair, or any other walking aid (Doc. 42-2, para. 21; *see also* Doc. 1, pp. 15–19). Nurse Faulkenberry ordered the antibiotics prescribed by the hospital, and Plaintiff began receiving them immediately (Doc. 42-2, para. 22, 23; Doc. 42-1, p. 50).

About a week later, Thursday, October 6, 2022, at 12:41 p.m., Plaintiff submitted a second Request for Medical Treatment (Doc. 42-2, para. 26; *Id.* at p. 12). He said the hospital had diagnosed him with cellulitis and a fracture. He further stated. "[w]ith the weight of my body and me trying to walk to the bathroom, I feel I have only caused more damage to my leg and my foot." (Doc. 42-2, p. 12).[2] Plaintiff said he felt like he had a broken foot and it was swollen. He said it was not swollen when he went to the hospital, and it was very painful trying to get to the bathroom. He asked that something be done.

Nurse Falkenburry responded on Monday, October 10th at 7:41 a.m., stating that she would speak to the doctor to see what he wanted to do (Doc. 42-2, para. 27; *Id.* at p. 13). Nurse Falkenburry called Dr. Kupferer that same day, and the doctor told her that Plaintiff was still completing his antibiotic course and instructed her to wait to see if his

---

[2] The record from the September 28, 2022 Sick Call with Nurse Falkenburry indicates that Plaintiff weighed 441 lbs. (Doc. 42-2, p. 11).

condition resolved after the antibiotics were completed (Doc. 42-3, para. 17). Dr. Kupferer suspected Plaintiff's pain was related to his cellulitis and determined that Plaintiff did not require further treatment at that time.

Plaintiff submitted another Request for Medical Treatment on October 12, 2022, at 11:38 a.m., claiming his leg had not gotten better, it was harder to use the restroom, and the officers took issue with allowing other people getting his tray (Doc. 42-2, para. 29; *Id.* at p. 14). Plaintiff claimed the emergency room provider told him his leg was broken, yet nothing had been done to fix the situation. He said he was in pain and in a dangerous situation. Nurse Falkenburry responded the following morning, telling Plaintiff that the hospital report showed his leg was *not* broken; he only had an old healed linear fracture on that leg (Doc. 42-2, para. 30; *Id.* at p. 15). She said she would ask the doctor if he wanted another x-ray to verify. Nurse Falkenburry called Dr. Kupferer on October 13, 2022, and he said to schedule Plaintiff for a Sick Call to be evaluated by him (Doc. 42-2, para. 31; Doc. 42-3, para. 18). Nurse Falkenburry scheduled Plaintiff for a Sick Call with Dr. Kupferer for the next time the doctor was scheduled to be at the Jail, which was October 20, 2022 (Doc. 42-2, para. 32; Doc. 42-3, para. 19).

Dr. Kupferer saw Plaintiff for a Sick Call on October 20, 2022 (Doc. 42-3, para. 19; *see also* Doc. 42-2, p. 16). He ordered another round of antibiotics (Augmentin) for seven days to clear up any remaining infection and hopefully resolve Plaintiff's pain. He ordered Ibuprofen three times daily for ten days to treat Plaintiff's pain. And he ordered Lasix to address fluid in Plaintiff's leg, but Plaintiff refused the medication, stating he did not want to pay for it. Dr. Kupferer also told Nurse Falkenburry to schedule Plaintiff for

a follow-up appointment to check on Plaintiff's leg. Nurse Falkenburry ordered the antibiotics and pain medication, and Plaintiff received them (Doc. 42-2, para. 35, 36).

Physician Assistant Mary Zimmer saw Plaintiff for the follow-up appointment on November 9, 2022 (Doc. 42-2, para. 38; Doc. 42-3, para. 20; *see also* Doc. 42-2, p. 17).[3] Plaintiff complained of pain in his left foot. Zimmer recommended left foot x-rays, Motrin, and a shower chair.[4] Plaintiff received the Ibuprofen that PA Zimmer ordered (Doc. 42-2, para. 40). Nurse Falkenburry informed jail officers that Plaintiff could use a shower chair (Doc. 42-2, para. 41), and the Jail also moved Plaintiff to a Booking Cell where he was closer to the shower and toilet (*Id.* at para. 42). The new x-rays of Plaintiff's left foot were taken on November 18, 2022, at SIH St. Joseph Memorial Hospital (Doc. 42-3, para. 21). The x-rays showed "no acute osseous abnormality in the left foot," meaning there was no fracture or acute bone-related issue in his foot (Doc. 42-3, para. 14, 21). Dr. Kupferer determined that Plaintiff did not need further treatment for his left leg or foot and did not need crutches or a walking aid for his left leg or foot (Doc. 42-3, para. 22, 23).

Plaintiff's cellulitis resolved with antibiotics, but he claims his pain continued (Doc. 42-2, para. 46; Doc. 42-1, p. 70). Plaintiff did not submit any other Requests for Medical Treatment related to his left leg or foot while at the Jail (Doc. 42-2, para. 44). Neither Nurse Falkenburry nor Dr. Kupferer saw the grievances that Plaintiff submitted at the jail related to his leg because grievances are sent to Jail Officers, not medical

---

[3] PA Zimmer was a medical provider that filled in for Dr. Kupferer when he was absent (Doc. 42-2, para. 38).

[4] Dr. Kupferer was not involved in the evaluation on November 9, 2022, and did not sign-off on Zimmer's care (Doc. 42-3, para. 20).

personnel (Doc. 42-2, para. 47; Doc. 42-3, para. 24). Plaintiff was taking Ibuprofen for pain up to December 10, 2022, when he signed a Medical Service Refusal, stating he did not want to continue the medication (Doc. 42-2, para. 45; *see also id.* at p. 18). Plaintiff testified that he has not received any different or additional care for his left leg since leaving Jackson County Jail and going to Menard Correctional Center (Doc. 42-1, p. 70.

## ANALYSIS

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's task is to view the record and draw all reasonable inferences in the light most favorable to the non-moving party and decide if there is a genuine material dispute of fact that requires a trial. *Stewart*, 14 F.4th at 760; *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014). "Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

Where, as here, "a nonmovant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment was proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant."

Page 8 of 18

*Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

As previously mentioned, Plaintiff is proceeding against Dr. Kupferer and Nurse Falkenburry on a Fourteenth Amendment claim for inadequate medical care and a state law medical malpractice claim. The Court begins its discussion with the medical malpractice claim. And on this claim, Defendants are entitled to summary judgment because Plaintiff never produced an affidavit stating that "there is a reasonable and meritorious cause" for his medical malpractice claim or a written report from a qualified, licensed physician who reviewed the case and provided reasons that support the assertion that "there is a reasonable and meritorious cause for the filing of such action," as required by Illinois law. 735 ILL. COMP. STAT. 5/2-622. *See also Young v. United States,* 942 F.3d 349, 350 (7th Cir. 2019) ("This requirement applies to malpractice litigation in federal court because § 5/2-622 is a substantive condition of liability.").

As for Plaintiff's constitutional claim, because he was a pretrial detainee at the Jackson County Jail, his claim arises under the Fourteenth Amendment Due Process Clause, which is governed by the objective reasonableness standard. *Lee v. Milwaukee Cnty., Wisconsin*, 175 F.4th 877, 883 (7th Cir. 2026) (citing *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019)). That standard requires Plaintiff to first show that his physical ailments were objectively serious. *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring) (citing *Kingsley*, 576 U.S. at 398); *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (citing *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018); *see also Lee*, 175 F.4th *see* 883–84, 885 (7th Cir. 2026). Plaintiff must next show that the defendant "acted

purposefully, knowingly, or perhaps even recklessly when considering the consequences of his response to the medical condition at issue" and that the defendant's actions were "objectively unreasonable." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citing *McCann*, 909 F.3d at 886).

Objectively unreasonable means "insufficient to abate a 'serious risk of harm'" from a reasonable health care professional's perspective. *Lee,* 175 F.4th at 885 (citing *Pittman ex rel. Hamilton v. Madison County,* 108 F.4th 561, 571–72 (7th Cir. 2024)). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively — without regard to any subjective belief held by the individual — whether the response was reasonable." *Williams*, 937 F.3d at 942 (quoting *McCann*, 909 F.3d at 886). A showing of negligence or even gross negligence will not suffice." *McCann*, 909 F.3d at 886. *Accord James*, 959 F.3d at 318.

Here, Defendants do not contest that Plaintiff's physical ailments were objectively serious (*see* Docs. 42, 44). The Court therefore assumes they were for purposes of deciding summary judgment. The question thus becomes whether Dr. Kupferer and Nurse Falkenburry's actions were objectively unreasonable.

As an initial matter, the Court must address the time frame at issue. Plaintiff alleges that Dr. Kupferer and Nurse Falkenburry denied him adequate medical care for his leg fracture and cellulitis between September 22, 2022, and November 18, 2022 (*see* Doc. 1, pp. 7–8; *see also* Doc. 7, p. 2). However, there is no evidence that Nurse Falkenburry learned of any issue with his leg until September 28th, when she examined Plaintiff at a

Sick Call. And there is no evidence that Dr. Kupferer learned of any issue with Plaintiff's leg until September 29th, when Nurse Falkenburry called to consult with him about her examination of Plaintiff. As such, any allegation that Nurse Falkenburry and Dr. Kupferer provided inadequate medical treatment for Plaintiff's leg prior to September 28th and 29th, respectively, necessarily fails.

As for the treatment Plaintiff received on September 28th, 2022, and thereafter, Plaintiff did not file a response to the motions for summary judgment and thus has made no argument to the Court as to why he thinks the evidence derived in this action shows that Dr. Kupferer and Nurse Falkenburry provided him with constitutionally inadequate medical care. The Court is therefore left with only Plaintiff's original allegations set forth in the complaint. Plaintiff's allegations—read generously—are that he was in pain and diagnosed with cellulitis and a fractured leg, but Dr. Kupferer and Nurse Falkenburry failed to provide him with adequate medical treatment, the primary deficiency being that he was not given a cane, crutch, or wheelchair (*see* Doc. 1, pp. 7–8). *See Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (a pro se complaint "is to be liberally construed, and . . . held to less stringent standards than formal pleadings drafted by lawyers[.]") (internal quotation marks and citation omitted).

To the extent that Plaintiff is claiming deficient medical care for a broken leg, this argument can be dispatched easily because there is no evidence that Plaintiff's leg was in fact broken. Rather, two separate x-rays showed there was no recent fracture or dislocation. While the imaging showed an old fracture, the emergency room doctor obviously did believe it necessitated any treatment because the hospital did not, for

Page 11 of 18

example, put a cast on Plaintiff's leg, tell him to follow up with an orthopedist, instruct him not to bear any weight on his leg, provide him with (or otherwise order him to use) a cane, crutch, or wheelchair, etc.

As for the treatment he received for cellulitis, no reasonable jury could find that Nurse Falkenburry's actions were objectively unreasonable. She timely responded to Plaintiff's first Request for Medical Treatment. She examined Plaintiff and promptly consulted with Dr. Kupferer about her examination. She then promptly followed the doctor's order to send Plaintiff to the hospital for additional diagnostics. When Plaintiff returned from the hospital, she promptly ordered the antibiotics that had been prescribed. When Plaintiff continued to complain about ongoing pain, Nurse Falkenburry responded to each of his requests for treatment and consulted with Dr. Kupferer. Nurse Falkenburry complied with all of Dr. Kupferer's orders—she scheduled the appointments he asked for and ordered the medications he prescribed. When PA Zimmer stepped in to care for Plaintiff, Nurse Falkenburry likewise complied with all of her orders and took the necessary actions to implement them.

To the extent that Plaintiff thinks Nurse Falkenburry should have given him some kind of assistive device, there is no evidence that, as a nurse, she had the authority to provide Plaintiff with one (*see* Doc. 42-2). Even if the Court assumes that she did, there is no evidence that Plaintiff ever asked her for one. Nor is there any evidence that Plaintiff required one—his foot was not fractured, despite his contentions to the contrary. Additionally, neither the hospital physician, Dr. Kupferer, PA Zimmer, nor the Illinois Department of Corrections thought Plaintiff needed an assistive device, which

demonstrates that Nurse Falkenburry did not act unreasonably in declining to provide one to Plaintiff. *See Williams,* 937 F.3d at 944 (holding jail's decision not to provide inmate with extra mattress was not objectively unreasonable in part because it "was later validated outside of the Racine County Jail: the Wisconsin Department of Corrections similarly denied his request for a thick mattress after it conducted its own medical examination."); *cf. Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (holding doctor not deliberately indifferent because no evidence that he departed significantly from accepted professional norms where his "decision to forego an MRI was implicitly endorsed by every other doctor who examined Mr. Pyles."). While a walking aid arguably may have been helpful, there is no evidence that it was necessary to provide constitutionally adequate medical care. Pretrial detainees—like posttrial prisoners bringing suit under the Eighth Amendment—are not entitled to demand specific care and their disagreement with the course of treatment chosen by the jail's medical staff "does not mean that the course of treatment was objectively unreasonable." *Williams,* 937 F.3d at 944 (citing *Johnson v. Doughty,* 433 F.3d 1001, 1012–13 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient [to show deliberate indifference].")). *Cf. Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [an inmate] is not entitled to demand specific care," nor are they "entitled to the best care possible"; they are only "entitled to reasonable measures to meet a substantial risk of serious harm . . . .").

In sum, the evidence shows that Nurse Falkenburry was responsive and diligent in the care she provided to Plaintiff. As a nurse, she was permitted to rely on the

Page 13 of 18

physicians and physician assistant's diagnosis and prescribed treatments for Plaintiff's cellulitis and related symptoms, and she had no reason to second-guess their medical judgment because there was nothing about their orders or course of care that raised any obvious risks of harm for Plaintiff. *See McCann*, 909 F.3d at 887 (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.")).

As for Dr. Kupferer, he learned of the issue with Plaintiff's leg on September 29, 2022, when Nurse Falkburry called him to discuss her assessment of Plaintiff. Dr. Kupferer did not simply sign off on the nurse's assessment but rather opted to take the additional step of sending Plaintiff to the hospital to rule out a blood clot. After learning the results of the diagnostics from the hospital and the course of treatment that was ordered, Dr. Kupferer did not believe anything further was necessary. There is no evidence suggesting the contrary was true.

Dr. Kupferer was brought back into the situation when Nurse Falkenburry called him on October 10th about Plaintiff's reports of ongoing pain in his leg/foot. Dr. Kupferer knew that Plaintiff had no fracture or blood clot and suspected the pain was from the cellulitis. He decided, in his medical judgment, to wait to see if the antibiotics resolved Plaintiff's pain. There is nothing that suggests this wait-and-see approach was objectively unreasonable. Doctors outside of prison often wait until a patient has fully completed any prescribed course of antibiotics before weighing whether to prescribe additional

Page 14 of 18

treatment.

When Plaintiff continued complaining of pain, Dr. Kupferer personally evaluated Plaintiff and adjusted the treatment plan in response to Plaintiff's complaints. The doctor ordered another round of antibiotics, over-the-counter pain medication, and Lasix to reduce the fluid in Plaintiff's leg, as well as a follow-up appointment. There is nothing about Dr. Kupferer's treatment decisions that strike the Court as objectively unreasonable. To the extent that Plaintiff thinks Dr. Kupferer should have given him crutches or other assistive device, Dr. Kupferer undoubtedly had the authority to prescribe an assistive device, but it was not objectively unreasonable for him not to do so for the same reasons discussed above regarding Nurse Falkenburry.

In sum, the totality of the circumstances shows that Dr. Kupferer relied on Nurse Falkenburry to care for Plaintiff, he consulted with Nurse Falkenburry about Plaintiff's issues, and he provided instructions to her and recommended further treatment when appropriate. In other words, Dr. Kupferer exercised his medical judgment in caring for Plaintiff. And there is nothing that suggests the care he provided subjected Plaintiff to any serious risk of harm or was otherwise inappropriate or deficient in any manner. *Cf. Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (no deliberate indifference "so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards").

For these reasons, both Nurse Falkenburry and Dr. Kupferer are entitled to summary judgment.

CONCLUSION

The Motion for Summary Judgment filed by Defendants Dr. Thomas Kupferer and Nurse Connie Falkenburry (Docs. 42, 44) are **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: June 23, 2026**

_Mark A. Beatty_

**MARK A. BEATTY**
**United States Magistrate Judge**

<u>**NOTICE**</u>

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.